# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| SHEKELA JONES FIELDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:19cv186-MHT |
| LEE STAFFING, INC., d/b/a | ) | (WO) |
| Allegiance Staffing, and | ) | |
| ITHAKA HOSPITALITY | ) | |
| PARTNERS AUBURN HUMAN | ) | |
| RESOURCES, LLC, d/b/a The | ) | |
| Hotel at Auburn University | ) | |
| And Dixon Conference | ) | |
| Center, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

Plaintiff Shekela Jones Fielder filed this race-discrimination-in-employment lawsuit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* She has named as defendants her

"joint employers," The Hotel of Auburn and Allegiance Staffing.[1]

Both The Hotel of Auburn and Allegiance Staffing have moved to dismiss or, alternatively, to stay proceedings and compel arbitration under the arbitration clause in Fielder's employment agreement. For reasons that follow, the court will grant the motions to the extent that arbitration will be compelled and these federal-court proceedings stayed. [2]

---

1. The Hotel of Auburn's full and formal name is Ithaka Hospitality Partners Auburn Human Resources, LLC, doing business as The Hotel at Auburn University and Dixon Conference Center. Allegiance Staffing's full and formal name is Lee Staffing, Inc., doing business as Allegiance Staffing.

2. Since the Federal Arbitration Act instructs that the court "shall ... stay the trial of the action" pending arbitration and there remains the possibility that the claims against The Hotel could still be tried in this forum if the arbitrator determines the claims are not arbitrable, the court will grant the relief to the extent of staying the action and compelling arbitration, not dismissal. *See* 9 U.S.C. § 3.

**A.**

Fielder has consented to arbitration of her Title VII claims against Allegiance Staffing. Allegiance Staffing's motion will therefore be granted, as stated, to the extent that arbitration will be compelled and these federal-court proceedings stayed as to it.

However, Fielding objects to the arbitration of her Title VII claims against The Hotel of Auburn, which, unlike Allegiance Staffing, is a nonsignatory to the arbitration agreement. She contends her claims against The Hotel should proceed in this court. The Hotel replies that, as a substantive matter, the claims against it are arbitrable and that, in any event, the question whether Fielder's claims are arbitrable is for the arbitrator, not this court, to decide in the first instance.

B.

The Federal Arbitration Act makes agreements to settle disputes by arbitration generally enforceable. *See* 9 U.S.C. § 2. "Under the Act, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Harry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). In arbitration agreements, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.'" *Id.* (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). Upon finding that there are one or more arbitrable issues in the case, the court "shall on application of one of the parties stay the trial of the action" pending arbitration. 9 U.S.C. § 3.

In interpreting an arbitration agreement such as this one, this court must consider answering two questions: (1) who decides--the court or the arbitrator--whether a claim is arbitrable (the "who" question); and (2), if it is the court, whether that claim is, in fact, arbitrable under the terms of the agreement (the "what" question). This court now turns first to the "who" question.

Whether a nonsignatory to an arbitration agreement may enforce that agreement is a threshold issue governed by state law. *See Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1170-71 (11th Cir. 2011) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009)). Under Alabama law, "whether an arbitration provision may be used to compel arbitration of a dispute between a nonsignatory and a signatory is a question of substantive arbitrability." *Anderton v. Practice-Monroeville, P.C.*, 164 So. 3d 1094, 1101 (Ala. 2014). "[S]ubstantive arbitrability addresses both

whether [] nonsignatories ... can enforce the agreement to arbitrate and whether the claims at issue are encompassed by the arbitration provision." *Carroll v. Castellanos*, --- So. 3d ---, No. 1170197, 2019 WL 1305882, at *4 (Ala. Mar. 22, 2019).

If the parties to an arbitration agreement "clearly and unmistakably" agree to arbitrate the issue of substantive arbitrability--including whether a nonsignatory may compel arbitration--the court must respect that agreement. *Anderton*, 164 So. 3d at 1102; *accord First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so.") (quoting *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 649 (1986)).

The Alabama Supreme Court's decision in *Anderton, supra,* is instructive here. In *Anderton*, a medical practice contracted with a software company to purchase

software.  The software company used another company to sell and service its software.  The sales-and-service company, in turn, employed Anderton, who was also a partial owner.  When the medical practice became dissatisfied with the software, it attempted to cancel its contract with the software company.  But it did not sue the software company.  Instead, it sued the sales-and-service company and its owner–employee Anderton, who were not parties to the arbitration agreement.  The sales-and-service company and Anderton nonetheless attempted to enforce the arbitration agreement against the medical practice.  And they argued that, under the agreement, the arbitrator, and not the court, should decide whether they could compel arbitration as nonsignatories.

The state court looked first to the agreement itself, which included an arbitration provision that incorporated the rules of the American Arbitration Association ("AAA").  Under those rules, "'The

arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Anderton*, 164 So. 3d at 1102 (quoting the AAA rules). The court held that, by incorporating the AAA rules, the agreement clearly and unmistakably showed the signers' intent to have the arbitrator decide whether a nonsignatory could compel arbitration. *See id.; see also Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (noting "the incorporation of the AAA Rules into a contract requiring arbitration to be a clear and unmistakable indication the parties intended for the arbitrator to decide threshold questions of arbitrability"); *Joe Hudson Collision Center. v. Dymond*, 40 So. 3d 704, 710 (Ala. 2009) (noting that an arbitration agreement incorporating the AAA rules clearly and unmistakably delegates arbitrability questions to the arbitrator); *cf. Terminix Int'l Co. v.*

8

*Palmer Ranch Ltd.*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("By incorporating the AAA rules ... into their agreement, the parties clearly and unmistakably agreed that the arbitrator should decide whether the arbitration clause is valid."). Thus, although "usually decided by the court," the question of enforcement by a nonsignatory "ha[d] been delegated to the arbitrator." *Anderton*, 164 So. 3d at 1102. The state court therefore did not reach the "what" question--that is, whether the sales-and-service company and owner-employee Anderton could, in fact, compel the medical practice to arbitrate. *See id.*

*Anderton* compels a similar conclusion here. As with Anderton and the sales-and-service company, who did not sign the software contract, The Hotel of Auburn did not sign Fielder's employment contract. And as with the agreement in *Anderton*, Fielder's arbitration agreement incorporates, and is thus governed, by the AAA rules. *See* Employment Agreement (doc. no. 21-1) at

3 (setting forth that disputes "shall be submitted to *BINDING AARBIATION*, according to the AAA, that is, the National Rules for the Resolution of Employment Disputes of the American Arbitration Association then existing in the County where the Employer maintains its principal place of business."). And, finally, as in *Anderton*, Rule 6(a) of the AAA gives the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association, Employment Arbitration Rules and Mediation Procedures (2009), [https://adr.org/sites/default/files/EmploymentRules Web 2119.pdf](https://adr.org/sites/default/files/EmploymentRules Web 2119.pdf).

Therefore, just as was true in *Anderton*, Fielder's arbitration agreement clearly and unmistakably delegates the question of enforcement by a nonsignatory, such as The Hotel of Auburn, to the arbitrator.

**\*\*\***

By agreement of the parties, the court will, therefore, grant Allegiance Staffing's arbitration motion to the extent of compelling arbitration of the claims against it and staying these federal-court proceedings. The court will also grant The Hotel of Auburn's arbitration motion to the extent of compelling arbitration of the claims against it (with the threshold issue for the arbitrator being whether the claims are even arbitrable) and staying these federal-court proceedings.

An appropriate judgment will be entered.

DONE, this the 27th day of November, 2019.

                                          /s/ Myron H. Thompson
                                        **UNITED STATES DISTRICT JUDGE**